## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| KEVIN B. DUFF, as Receiver for Central Sleep Diagnostics, LLC, | |
| Plaintiff-Appellee, | Case No. 13-3837 |
| v. | |
| CENTRAL SLEEP DIAGNOSTICS, LLC *et al*., | |
| Defendants. | |
| APPEAL OF GOODMAN TOVROV HARDY & JOHNSON LLC, | |
| Adverse Claimant-Appellant. | |

### GOODMAN TOVROV'S RESPONSE TO DUFF'S SANCTIONS MOTION

Duff's sanctions motion is inappropriate and should be denied.  For the reasons provided in the appellate opening brief and to be provided in the appellate reply brief, we ought to win this appeal.  But even if this Court ultimately disagrees, our arguments are colorable and serious.  This appeal is not "frivolous" within the meaning of Fed. R. App. P. 38.  Moreover, most of what Duff says in his sanctions motion is inaccurate or a red herring.  Despite Duff's vicious rhetoric, he never really grapples with the problem at issue in this appeal:  why should the estate of Central Sleep Diagnostics (CSD) receive preferential treatment over the other creditors of Kenneth and Katherine Dachman, particularly with regard to an asset (a personal medical malpractice and associated loss of consortium settlement) that had nothing to do with the CSD fraud?  It shouldn't, so the appeal is serious.

1. <u>Duff was the receiver of Central Sleep Diagnostics only.  He was not the receiver of Kenneth Dachman, Katherine Dachman or any "DBA."</u>  The misstatements begin on page two

1

of the sanctions motion in the first substantive sentence. Judge Pallmeyer did not oversee "the receivership of notorious white-collar felon Ken Dachman and his various DBAs." In actuality, as Mr. Duff acknowledged in his distribution plan, he was the receiver of Central Sleep Diagnostics, LLC ("CSD") only. He was not the receiver of the personal estates of Kenneth or Katherine Dachman or of any other entity. Indeed, Mr. Duff explicitly stated on page 16 of his Motion to approve his distribution plan that "Only [] claims for CSD were accepted." R. Doc. 379.

This is crucial because it means that there was, and is, no reason why Mr. Duff should get preferential treatment over any other creditor of Kenneth or Katherine Dachman, including us, with regard to assets that have nothing to do with the CSD fraud, such as a medical malpractice claim or an associated loss of consortium claim.

2.     We did not "conceal assets" from the receiver or the district court. Duff complains that we did not tell him, or the district court, about Dachman's medical malpractice lawsuit or our lien on that medical malpractice lawsuit. But Duff does not offer a coherent explanation of why we were under any obligation to tell Duff, a competing creditor, about an asset we discovered. Duff was not a party to our state court collection case and was not a party to the state court medical malpractice action. Nor does Duff offer a coherent explanation of why we were supposed to tell the district court about a state court medical malpractice lawsuit we discovered in trying to collect our own state court collection judgment. Duff argues that it was implicit in Judge Pallmeyer's September 6, 2011 minute order (R. Doc. 222) giving Duff the right to object if we "succeed[ed] in recovering money from Mr. Dachman and his co-Defendants" that we had to tell Duff at all times what we were doing. But Judge Pallmeyer said nothing of the sort, and could, perhaps, have explicitly ordered us to keep Duff continually in the

2

loop; she did not.  The burden was on Mr. Duff to monitor what was going on in the state court collection action.  Moreover, we haven't yet succeeded in recovering money from the Dachmans, so even if one can gin up some sort of implicit notice obligation on our part, it never came into play.

Nor was the receiver precluded from objecting to our state court judgment or our state court lien.  Mr. Duff learned about our state court case in August or September of 2011 at the same time we learned about the receivership.  This is discussed on page 11 of our appellant brief. Nothing stopped him from defending, or, at minimum, monitoring that lawsuit to see what we were doing and if he could learn something.  And in the summer or fall of 2013, after we complained that Duff was asking Judge Pallmeyer to collaterally attack a state court judgment, nothing stopped Duff from trying to re-open our state court judgment or trying to strip our lien off the medical malpractice judgment.  He did none of these things.  Having failed to do so, he cannot collaterally attack the state court orders in federal district court.

Finally, of course, these are not reasons to sanction us under Fed. R. App. P. 38.  Even if there is some color to what Duff is saying, he should have made his arguments in state court or the district court.  What Duff is complaining about happened there, and not in this appeal.

3.     <u>Mr. Duff is the one who sought and received special treatment over other creditors of Kenneth and Katherine Dachman</u>.  As pointed out in our appellant brief at 10, Mr. Duff does not seem to have given anyone notice of the order he sought and received from Judge Pallmeyer staying all litigation against the Dachmans personally.  Our complaint about the due process issues raised by this unpublicized stay, R. Doc. 213, is presumably what caused Judge Pallmeyer to lift the stay, R. Doc. 222.

4.     Mr. Duff's claim that we had notice of the receivership because of an order entered after we withdrew as counsel for the Dachmans is frivolous.  Citing an order entered on November 1, 2010, R. Doc. 51, appointing Judge Sullivan as receiver, Duff claims we had knowledge of the existence of the receivership on that date.  It is hard to know whether to laugh or to cry.  Our motion to withdraw as counsel for the defendants was granted on October 15, 2010.  R. Doc. 43, 45.  Even if, as Duff claims, the ECF system improperly gave us notice on November 1, 2010 despite that we had withdrawn, we had no reason to pay attention.  It would be wrong to deem this constructive notice, let alone actual notice.  If Messrs. Sullivan and Duff wanted us (or anyone else) to comply with receivership orders, they needed to publicize them. They apparently did not, and cannot now complain about our failure to comply with orders we had no notice of.

5.     It cannot be sanctionable to fail to inform this Court that we did not post a supersedeas bond since stays based upon supersedeas bonds are not available in appeals from receiverships.  There was no reason for us to mention in our opening brief that we have not posted a supersedeas bond.  Fed. R. Civ. P. 62(a)(1) and 62(d) prohibit stays based upon supersedeas bonds in receiverships.

6.     The claim form is a red herring.  That we agreed that the district court had jurisdiction over the claim we submitted to Mr. Duff for a distribution from the estate of Central Sleep Diagnostics has no bearing on whether our lien on the medical malpractice recovery should have been honored as a matter of state law.  That lien stemmed from our status as creditors of Katherine Dachman and Kenneth Dachman, not our status as creditors of Central Sleep Diagnostics (CSD).  If we are correct and our lien on the medical malpractice judgment should have been honored, the fact that we were also creditors of CSD would have become

irrelevant.  Having been paid in full via the medical malpractice lien, we would have abandoned our claim in the CSD receivership.  We don't dispute that the district court had jurisdiction over us because we submitted a claim in the CSD receivership.  Our distinct claim is that the district court failed to give full faith and credit to our state court judgments against CSD, Kenneth Dachman and Katherine Dachman. And of course we are crediting Kenneth and Katherine Dachman for what we recovered from the estate of Central Sleep Diagnostics.  Appellants' Brief at 3.  There will be no "double recovery" if we win this appeal.

Anyone owed money by all of Central Sleep Diagnostics, Katherine Dachman and Kenneth Dachman had the right to do exactly what we did:  pursue Kenneth and Katherine Dachman while simultaneously filing a claim with Mr. Duff as receiver of CSD.  Receipt of a distribution from CSD did not bar us from collecting from the Dachmans.

7.    There is meaningful relief that we can obtain if the appeal is successful.  If the appeal is successful, it will be because we were a secured creditor by virtue of our lien and were entitled to priority over the administrative claimants (such as Mr. Duff, Judge Sullivan and their counsel and other professionals, such as accountants) and the unsecured creditors (the anonymous recipients of the distribution to unsecured creditors).  Hence we would be able to bring preferential transfer claims against any of the other distributees as ancillary proceedings under the aegis of the receivership, which would be reopened for that purpose.  There is nothing in Illinois or federal law that would prohibit such a claim.  The so-called *Barton* doctrine, *Barton v. Barbour*, 104 U.S. 126, 128-29 (1881), would not stand in the way because the suit would be filed in the receivership court.  We might also be able to bring conversion claims against Dr. Buyer and his medical practice and perhaps his insurers or counsel for paying the entire $305,000 medical malpractice recovery to the Loggans firm as counsel for the Dachmans despite

5

the fact that they were on notice of our judicial lien.  We might also be able to bring a conversion

claim against the Loggans firm, Dachmans' counsel in the medical malpractice claim, for

representing in the settlement agreement of that case that there were no liens when they knew

that we had a lien, and thereby causing Dr. Buyer, his medical practice and perhaps his insurers

or counsel to disregard that lien.  (That claim is weaker because Dr. Buyer, his medical practice,

his counsel and presumably his insurance company also had direct knowledge of our lien, so it is

unclear whether anything the Loggans firm did was material.)  The district court's decision

immunizes everyone from conversion claims because it implicitly blesses the disregard of our

lien.  But there is nothing in Illinois or federal law that would prohibit us from bringing

conversion claims if this Court overturns the district court's decision by finding that we are a

secured creditor and should have been paid in full out of the medical malpractice settlement.

      8.     <u>We concede that the district court was notified of the identity of the recipients of</u>

<u>the distributions.</u>  We acknowledge that the Receiver seems to have shared the identity of the

recipients of the distributions *in camera* with the district court.  R. Doc. 379 at 16, fn. 5.  We

missed this footnote, which is, incidentally, in unusually small print, and apologize for the

misstatements at the bottom of page 12 and top of page 13 of our appellant brief to the contrary.

That said, our point remains valid: while the district court had the benefit of the identity of the

proposed distribution recipients, no one else did.  A secret distribution is still inappropriate, and

this Court should order the list of recipients and their addresses published in full on remand.

      9.     <u>Duff's citations appear to be improper and worthless</u>.  Duff argues that he placed

Kenneth and Katherine Dachman under citation, and attaches copies of what purport to be his

citations to his Motion for Sanctions!  Notably, *these documents are not in the record*, and it is

improper to supplement the record by attaching documents to a motion filed contemporaneously

with an appellee brief.  The proper course is to (attempt to) certify and submit a supplemental record on appeal.  Fed. R. App. P. 10(e)(2).  Moreover,

- Collection procedure in a federal district court in Illinois has to comply with Illinois collection procedure.  Fed. R. Civ. P. 69(a);

- An Illinois citation has to be issued by the Clerk of Court.  735 ILCS 5/2-1402(a); Illinois Supreme Court Rule 277(b).  None of Duff's citations were issued by the Clerk of Court.  They do not bear a stamp, seal or signature of the federal district court clerk or one of his deputies and do not appear in the record.  Hence they are worthless and do not create a citation lien;

- An Illinois citation has to be hand served on the debtor or a family member at the debtor's home.  735 ILCS 5/2-1402(b-1).  There is nothing showing that the citations on Kenneth Dachman or Katherine Dachman were hand served on either of them or upon relatives at their home.  This is an independent reason why the citations are worthless and did not create a citation lien;

- A citation lien is only good for six months in Illinois unless the citation is explicitly extended by the court that issued it.  Illinois Supreme Court Rule 277(f).  Duff's citations are dated July 11, 2011.  So even if Duff's citations are legitimate and were properly served, they expired in January of 2012, 4 ½ months *before* the medical malpractice lawsuit was filed, and cannot serve as the basis for creating a lien in that lawsuit.

Contrary to Duff's claim in his motion at 9, neither R. Doc. 261 nor R. Doc. 265 contain any document demonstrating that Duff obtained citations from the Clerk of the Court or served them

on Kenneth or Katherine Dachman.  Duff does not have a perfected lien in the medical malpractice proceeds and is not a secured creditor.

10.     Nothing was "concealed from the state court judge" presiding over the collection lawsuit.  But even if an argument can be constructed that something was concealed, the only appropriate remedy would be to reopen the state court case, not to collaterally attack state court orders in federal court.  Duff argues that we misrepresented to the state court that all parties to our state court lawsuit were given notice, and also concealed the federal receivership from the state court judge.  Motion at 9.  Neither of these claims is correct.  *Duff was not a party to the state court case and was not entitled to notice of goings on in it.*  All of the actual parties to the state court suit received proper notice of all filings and orders.  Plus Mr. Duff knew about the state court case and chose not to follow it or intervene.  See discussion at pages 10-11 of our appellant brief.  Moreover, while Duff asserts, without citing anything, that we concealed the receivership from the state court judge, the assertion is baseless.  To be honest we don't remember if the receivership was discussed before the judge in the state court collection proceedings.  It may well have been.  But without regard to whether it was discussed, it wasn't "concealed."  Given Duff's decision not to intervene in the state court collection proceedings or to defend Central Sleep Diagnostics, the only relevance of the federal receivership to the state court collection proceedings is that, without notice to anyone, Duff had the state court collection proceedings stayed, and when we found out about this we had to get Judge Pallmeyer to lift this stay.

Finally, once again, these are not reasons to sanction us under Fed. R. App. P. 38.  Even if there is some color to what Duff is saying, he should have made his arguments in state court. What Duff is complaining about happened there, and not in this appeal.

8

11.   We did not "conceal" the existence of the medical malpractice case or the medical malpractice settlement from anyone.  As discussed above, we were under no obligation to notify Mr. Duff about the medical malpractice case because we were competing with him to try to recover our respective judgments.  Mr. Duff does not explain why we were obligated to notify Judge Pallmeyer about the medical malpractice case. He also does not explain why we would have had any duties to the judges apparently presiding over Securities and Exchange Commission litigation (Judge Kendall) and Department of Justice litigation (Judge Zagel) against Kenneth Dachman.  The reason is simple: we did not.  We were pursuing our own interests by trying to collect a state court judgment.  We were not obligated to notify anyone and everyone at 219 South Dearborn who might conceivably be interested in what we were lawfully doing at the Daley Center.  Everyone has a role to play.  We assume that Mr. Duff was looking after the interests of the receivership, just as we assume that the SEC and the Justice Department were vindicating whatever interests they were pursuing in their respective cases.

We also didn't conceal the existence of the medical malpractice settlement.  We learned of it from *Mr. Duff* when he filed his July 29, 2013 motion seeking a judicial lien in the proceeds. R. Doc. 358.

Once again, these are also not reasons to sanction us under Fed. R. App. P. 38.  Even if there is some color to what Duff is saying, he should have made his arguments in the district court.  What Duff is complaining about happened there, and not in this appeal.

12.   This isn't about Mr. Duff or the receivership.  Mr. Duff has what might be called a "Duff-centric" view of this dispute.  He repeatedly offers vicious rhetoric in which he asserts that we did or didn't do certain things to keep him in the dark, or to prevent him from

challenging what we were doing, and did so despite our (seemingly invented) supposed obligations to him and various federal and state trial courts.

None of this is true. We had former clients who owed us several tens of thousands of dollars. One of them had written us a bad check as a retainer. Understandably irritated, we decided to file a state court collection lawsuit against them. We did this without any knowledge of a receivership or of Judge Sullivan's status as receiver of CSD. With all respect to Judge Sullivan, he never notified the Illinois Secretary of State that he had taken over CSD, so we properly served CSD's registered agent, Jayme R. Matchinski of Chicago's Hinshaw & Culbertson. Judge Sullivan was apparently recalled to the bench and handed the baton to Mr. Duff. Mr. Duff didn't notify the Illinois Secretary of State either.

Mr. Duff's counsel then contacted us, presumably because Ms. Matchinski was forwarding the pleadings and orders from our state court collection case that we were serving on her to Mr. Duff. (The citations for this are on pages 10 and 11 of the appellant brief.) Mr. Duff's lawyer Mr. Koch told us about Judge Pallmeyer's stay order, and we almost immediately filed a successful motion to have that stay lifted.

We then continued to do exactly what we had been doing. Mr. Duff and his counsel chose not to defend the state court collection case on CSD's behalf. Mr. Duff chose not to intervene in the state court case. Apparently Mr. Duff chose not to monitor what we were doing to try to collect our state court judgment. If he had done so, he would have learned about the medical malpractice case when or shortly after we learned about it, in late 2012 and as a result of our citation.

In this Court, Mr. Duff now claims that we were obligated to keep him apprised of what we were doing at the Daley Center so that he could swoop in and try to take away the money if

we found any.  Why?  This makes no sense.  Judge Pallmeyer's September 6, 2011 minute order (R. Doc. 222) is more plausibly interpreted as putting the burden on Mr. Duff to monitor what we were doing if he wanted to preserve the opportunity to swoop in and try to "take away our meal" if we succeeded in recovering assets.  Mr. Duff chose not to do so.  It was improper of Judge Pallmeyer to allow Mr. Duff to collaterally attack our state court judgments in federal district court.  Doing so violated the Full Faith and Credit Act.

All of Mr. Duff's bravado about sanctions and misconduct doesn't change any of this. We should win this appeal but even if this Court disagrees the appeal is plausible and we should not be sanctioned.

July 7, 2014                                              Respectfully submitted,


/s/ Adam Goodman

Adam Goodman
GOODMAN TOVROV HARDY &
JOHNSON LLC
105 West Madison Street, Suite 1500
Chicago IL 60602
(312) 238-9592 (direct)
(312) 264-2535 (fax)
agoodman@goodtov.com